COURTLAND S. MOORE *v.* ISABELLA MOORE ET AL.

(No. 3,710.)

1. As a general rule, no officer of the court can be considered in default, until he has technically refused to perform that which he may be required to do.

2. It is proper for a party to demand payment of moneys before the officer can be amerced, or interest be claimed for witholding it. An action may be brought, however, before an actual demand is made, and interest will be allowed from the commencement of the action.

3. There are cases where it is obligatory upon the fiduciary to seek the

Courtland S. Moore *v.* Isabella Moore et al.

party entitled to receive a fund, and thus relieve himself of the trust. He can not retain money for an indefinite time, use it as his own, and hold it without interest after his term of office has expired, merely on the ground that no demand has been made on him.

SPECIAL TERM.—Motion to compel sheriff to pay over moneys, with interest. A motion is filed in behalf of Peter Douglass, one of the defendant lien holders, for an order on Richard Mathers, late sheriff, to pay over certain moneys, with interest, which had been, by a former decree of distribution of the court, ordered to be paid to Douglass, by the sheriff, from a fund arising from a sale of certain mortgaged premises.

The question presented upon the motion is this: Shall Mathers, the late sheriff, be required to pay interest upon the money?

It appears by the testimony in the cause, that Douglass held certain tax certificates for property purchased by him at tax sale, the amount of which, with penalties and interest on the 30th of October, 1857, was $192.83. The tax had been assessed upon land owned by the heirs of Hugh Moore, which had been subjected to sale by decree, and, in order to give the buyer an unincumbered title, the sheriff was ordered to retain from the purchase money, and pay to Douglass, the sum already stated, to be his due. The date of the decree is October, 1857.

Shortly afterward Douglass called upon the sheriff, presented his certificates, and demanded his money, when he was informed by the sheriff that he had in his hand an execution, sent from Cayuhoga county, Ohio, against him, and his duty required him to retain so much of the fund as should be necessary to discharge it. Douglass denied that he was the person named in the process, and, it seems by mutual consent, the writ was returned, and inquiry made as to the identity of the party against whom it was issued, the money, for the time being, remaining with the sheriff. In a few weeks another writ was sent to Mathers, which was placed in the hands of his deputy, who called upon Douglass

to discharge it, when, by consent of the officer, he gave an order upon the sheriff to deduct the damages and costs from the amount in his hands.

For some cause not clearly explained, no appropriation was made, and the execution was sent back the second time. Early in March, 1858, another writ came into the sheriff's hands, upon which one of his deputies, notwithstanding the order already given to Mathers, seized upon Douglass' property, who was compelled to pay the amount claimed to be due, still denying, as he asserts, his liability to pay it.

Douglass was denied his money, with interest from the time it was made by the sheriff. His claim was resisted on the ground that there had never been a refusal to pay it; but, on the contrary, repeated requests had been made of Douglass to call at the sheriff's office and receive the amount.

*Washington Van Hamm*, for the motion.

*W. B. Caldwell*, contra.

STORER, J. Upon the question whether any such requests were made, the parties themselves are directly at issue. Both have testified; the one affirms, the other denies. Two of the sheriff's deputies have been sworn, who state in general terms that Douglass was notified several times, that the money was ready for him, and assured it would be paid on demand.

Upon these conflicting statements, we must determine the rights of the parties.

As a general rule, no officer of this court can be considered in default for a neglect of duty until he has absolutely refused to perform what he may be required to do in the relation he sustains. Whether it is the sheriff, the clerk or the attorney, neither is delinquent, unless some one of the obligations he has assumed, in virtue of the office he holds, is unfulfilled. Then it is proper for a plaintiff to demand in the first instance, payment of moneys due to him, and

which may have been collected on execution, or other process before the officer can be amerced, or interest be claimed, for withholding it. Nor is the spirit of the rule changed where a fund already in his hands is directed by the court to be distributed. There must even here be evidence of positive misconduct or omission of duty, before we could justly hold the officer shall be charged with anything more than the amount decreed to be appropriated. But there may be cases where it would not only be prudent, but obligatory even upon the fiduciary to seek out the creditor, and thus relieve himself of the trust. He certainly ought not to retain it for an indefinite time, use the fund as his own and consider himself as entitled to hold it, without interest, after his term of office has expired, merely on the ground that no demand has been made. It is our duty to protect the officer, as well as the suitor, both are entitled to our aid; but each must place themselves before us without legal blame, when they ask us to interfere on their behalf.

It is evident when the plaintiff first demanded his money, the sheriff could not have retained it. To justify the execution then in his hands against the plaintiff, we suppose he would not be permitted to apply it on any such principle, that the proceeds of one writ when one party is plaintiff, may be held to discharge another, when he was defendant, if both were in the officer's hands at the same time.

Until it was ascertained whether the plaintiff was the real debtor, there seems to have been no objection raised to the further retention of the money when the order was finally given to apply it, and that was refused; this coupled with the fact of the levy and subsequent discharge of the execution, the plaintiff establishes in our opinion such a state of things as we may well regard to be equivalent to a request to pay, and a consequent refusal to do so.

We think, then, that interest should be allowed from the 15th day of March, 1858, until the present time.

The last execution, it is proved, was received by the sheriff, on the 8th of March, 1858, and the levy and satis-

faction were during the same month. It is also admitted the refusal to apply the fund in controversy was made about the same time.

If the sheriff had paid the money he held into court, he might have ordered it to be deposited for the benefit of the plaintiff, and any accruing interest should have been added to the principal as a matter of course. This step would have saved all trouble, and avoided any litigation.

Further, if it had been shown, the sum now claimed had been deposited by the officer to the credit of the plaintiff, or specially held for his use, so that it could be distinguished from the private funds of the recipient and did not, therefore, become a part of his estate, in case of his death, he might hold that interest could not be claimed; but such is not the fact. We find the sheriff relies only upon his uniform willingness to pay, and requires a special demand to be made, before he is chargeable with any default, without proving the fund in controversy was specially set apart for the plaintiff, or not mingled up with his general account.

We do not think he has furnished a sufficient excuse to forbid the allowance of interest for the period we have indicated. We have stated the general rule to be that interest can not be computed until a demand has been made; but it is nevertheless true, an action may be brought before an actual demand is made, and interest will be allowed from the commencement of the action.

This was settled in *Dale* v. *Birch*, 3 Campbell, 347; *Brewster* v. *Van Ness*, 18 Johns. 133, and *Dygert* v. *Crane*, 1 Wendell, 534; and the principle thus governing the collection of money on execution, "*a fortiori*" should be the rule when the money has been already collected, and by order of the court appropriated. The character of the officer in the last case, partakes not only of that of sheriff, but as receiver, also, and it may be doubted whether he can protect himself from the liability to pay interest, when he has not directly notified the party entitled to receive the fund, of his willingness to pay it.

·The motion will, therefore, be sustained, and the sheriff ordered to settle the account upon the principle we have stated.

Motion granted.